```
 1  RANDY S. GROSSMAN
    Acting United States Attorney
 2  KEVIN J. LARSEN
    Assistant United States Attorney
 3  Arizona Bar No. 019865
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California 92101-8893
 5  (619) 546-6986
    Kevin.larsen2@usdoj.gov
 6
 7  Attorneys for United States of America
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case Nos. **21cr1275-DMS** |
|---|---|
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| RONALD JAMES GREEN, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, Acting United States Attorney, and Kevin J. Larsen, Assistant United States Attorney, and defendant RONALD JAMES GREEN, with the advice and consent of Adam Fels, counsel for Defendant, as follows:

Plea Agreement

Def. Initials *RG*

I

**THE PLEA**

Defendant agrees to waive indictment and to plead guilty to Count 1 of an Information charging Health Care Fraud in violation of 18 U.S.C. § 1347. Defendant knowingly and voluntarily waives any rights and defenses he may have under the statute of limitations applicable to the charged offense.

In exchange for Defendant's concessions, the United States agrees to not bring any additional criminal charges against Defendant for conduct outlined in the "Factual Basis" section of this plea agreement, unless Defendant breaches the plea agreement or the guilty plea entered pursuant to this plea agreement is set aside for any reason. If Defendant breaches this agreement or the guilty plea is set aside, section XII below shall apply. Defendant expressly waives all constitutional and statutory defenses to the reinstatement or initiation of any charges that the United States did not bring pursuant to this agreement.

In addition, the attached Financial Penalties Addendum shall govern forfeiture, restitution, and the fine in this case.

II

**NATURE OF THE OFFENSE**

A. **ELEMENTS EXPLAINED**

Defendant understands that the offense to which he is pleading guilty has the following elements:

Health Care Fraud [18 U.S.C. § 1347]

    1. Defendant and others executed or attempted to execute a scheme to defraud a health-care benefit program, or to

obtain money or property owned by, or under the custody or control of, a health-care benefit program, by means of false or fraudulent pretenses, representations, or promises;

2. The statements made or facts omitted as part of the scheme were material;

3. Defendant acted knowingly and willfully, that is, he is aware of the act and did not act through ignorance, mistake, or accident, and with knowledge that the act was unlawful, or knew or was aware of the high probability that the act was unlawful and deliberately avoided learning the truth;

4. Defendant did so in connection with the delivery of or payment for health-care benefits, items, or services.

B. FACTUAL BASIS: ELEMENTS UNDERSTOOD AND ADMITTED

The Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. Defendant and others engaged in a scheme to commit health care fraud through the submission of false and fraudulent claims to the Tricare Program ("healthcare fraud scheme"). The healthcare fraud scheme began at least in or around January 2015 and continued through to at least on or about June 29, 2015. While Defendant was always aware of the high probability that the healthcare fraud scheme was unlawful, he deliberately avoided

learning the truth until approximately May 1, 2015, and thereafter knowingly participated in the scheme through approximately June 1, 2015.

**Tricare Program**

2. Tricare is a federal health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that provides civilian health benefits for military personnel, military retirees, and military dependents. The scheme in which Defendant participated involved the submission of false and fraudulent claims to Tricare for expensive and medically unnecessary pain creams, scar creams and multi-vitamins (collectively, "compounded medications"), which were billed through Brookhaven Specialty Pharmacy, LLC. ("Brookhaven"), and other pharmacies.

3. NHS Pharma, Inc. and NHS Pharma Sales, Inc. (collectively "NHS") were California companies with principal places of business located in the Southern District of California. Defendant was a "marketing rep liaison." Brookhaven was a compounding pharmacy located in the Northern District of Oklahoma. SKR Services and Ventures LLC, (SKR) was a Florida company with its principal place of business in the Southern District of Florida that purportedly marketed compounded medications

dispensed by Brookhaven and other compounding pharmacies.

4. In furtherance of the scheme, Defendant and others caused compounding pharmacies, including Brookhaven, to make false and fraudulent claims on TRICARE and other payers for medically unnecessary compounded medications that were dispensed pursuant to false and fraudulent prescriptions obtained through a system of illegal health care kickbacks. Brookhaven and other compounding pharmacies paid NHS millions of dollars in illegal kickbacks and other remuneration in exchange for the referral of the false and fraudulent prescriptions for compounded medications belonging to TRICARE beneficiaries. Specifically, Brookhaven and other pharmacies paid NHS approximately 55% of the amount received from health care benefit plans including TRICARE, for each prescription referred to the pharmacies by NHS. NHS in turn paid a portion of this sum as a kickback to SKR and other so-called "marketing" organizations in exchange for, and as a further inducement to those organizations to, refer prescriptions for compounded medications for beneficiaries of health care benefit programs including TRICARE. TRICARE and other payers often reimbursed compounding pharmacies including Brookhaven thousands of

dollars for a 30-day supply of a compounded pain or scar cream for one beneficiary.

5. In furtherance of the health care fraud scheme, members of the conspiracy developed compounded medication formulations for the primary purpose of inflating the amount of money TRICARE would reimburse to Brookhaven, and to correspondingly increase the amount of kickbacks and remuneration that NHS and its affiliated marketers would receive. Defendant and others executed this scheme, for example, by using billing data to run "test claims" designed to identify high paying components which the other members of the conspiracy in turn assembled into expensive and medically unnecessary compounded medication formulations paid for by TRICARE and other health care benefit plans. Once identified and assembled, members of the conspiracy directed Defendant to edit the formulations on the pre-printed prescription pads reflecting the new formulations, and Defendant and others at NHS dispensed the prescription pads to marketing organizations including SKR that subsequently caused telemedicine physicians to ratify them irrespective of medical necessity. Additionally, members of the conspiracy perpetuated the health care fraud scheme by falsely waiving insurance co-payment collection requirements, and after Defendant became

aware of the fraudulent nature of the waivers, Defendant continued participating in the entirety of the scheme in the manner described above.

6. Defendant admits and agrees that on or about May 8, 2015, in the Southern District of California, in furtherance of the scheme described herein, he and others caused the submission of a false and fraudulent claim on Tricare in the approximate sum of $14,178 for Baclofen Powder.

7. Defendant's knowing participation in this health care fraud scheme resulted in TRICARE's payment of false and fraudulent claims to Brookhaven of at least $313,039.

## III

## PENALTIES

Defendant understands that Health Care Fraud in violation of 18 U.S.C. §1347, carries the following penalties:

A. a maximum 10 years in prison;

B. a maximum $250,000 fine, or twice the gross gain or loss derived from the offense;

C. a mandatory special assessment of $100 per count; and

D. a term of supervised release of 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison, upon any such revocation, all or part of the statutory maximum term of supervised release for the offense that resulted in such term of supervised release.

E.  an order from the Court pursuant to 18 U.S.C. § 3663A that Defendant make mandatory restitution to the victims of the offense of conviction, or the estate(s) of the victims(s). Defendant understands that the Court shall also order, if agreed to by the parties in this plea agreement, restitution to persons other than the victims of the offense of conviction.

F.  an order of forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

## IV

### DEFENDANT'S WAIVER OF TRIAL RIGHTS

Defendant understands that this guilty plea waives the right to:

A.  Continue to plead not guilty and require the United States to prove the elements of the crime beyond a reasonable doubt;

B.  A speedy and public trial by jury;

C.  The assistance of counsel at all stages of trial;

D.  Confront and cross-examine adverse witnesses;

E.  Testify and present evidence and to have witnesses testify on behalf of defendant; and,

F.  Not testify or have any adverse inferences drawn from the failure to testify.

Defendant knowingly and voluntarily waives any rights and defenses Defendant may have under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution to the forfeiture of property in this proceeding or any related civil proceeding.

//
//

Plea Agreement

8

Def. Initials *RG*

**V**

**DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE**

**PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION**

The United States represents that any information establishing the factual innocence of Defendant known to the undersigned prosecutors in this case has been turned over to defendant. The United States will continue to provide such information establishing the factual innocence of defendant.

Defendant understands that if this case proceeded to trial, the United States would be required to provide impeachment information relating to any informants or other witnesses. In addition, if Defendant raised an affirmative defense, the United States would be required to provide information in its possession that supports such a defense. Defendant acknowledges, however, that by pleading guilty, Defendant will not be provided this information, if any, and Defendant also waives the right to this information. Finally, Defendant agrees not to attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

**VI**

**DEFENDANT'S REPRESENTATION THAT GUILTY**

**PLEA IS KNOWING AND VOLUNTARY**

Defendant represents that:

A.   Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. Defendant understands that, by pleading guilty, Defendant may be giving up, and rendered ineligible to

Plea Agreement

9

Def. Initials *RG*

        receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant further understands that the conviction in this case may subject Defendant to various collateral consequences, including but not limited to deportation, removal or other adverse immigration consequences; revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, as well as civil and administrative liability, none of which will serve as grounds to withdraw Defendant's guilty plea.

B.   No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C.   No one has threatened Defendant or Defendant's family to induce this guilty plea.

D.   Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

## VII

**AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE**

**<u>SOUTHERN DISTRICT OF CALIFORNIA</u>**

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the United States will bring this plea agreement to the attention of other authorities if requested by Defendant.

**VIII**

**APPLICABILITY OF SENTENCING GUIDELINES**

Defendant understands the sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). Defendant understands further that in imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory, and the Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. Defendant understands further that the sentence cannot be determined until a presentence report has been prepared by the U.S. Probation Office and both defense counsel and the United States have had an opportunity to review and challenge the presentence report. Nothing in this plea agreement shall be construed as limiting the United States' duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

**IX**

**SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE**

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). Defendant understands that the sentence is within the sole discretion of the sentencing judge. The United States has not made and will not make any representation as to what sentence Defendant will receive. Defendant understands that the sentencing judge may impose the maximum sentence provided by statute, and is also aware that any estimate of the probable sentence by defense counsel is a prediction, not a promise, and is not binding on the Court. Likewise,

the recommendation made by the United States is not binding on the Court, and it is uncertain at this time what Defendant's sentence will be. Defendant also has been advised and understands that if the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant nevertheless has no right to withdraw his plea.

## X

## PARTIES' SENTENCING RECOMMENDATIONS

### A.  SENTENCING GUIDELINE CALCULATIONS

Although the parties understand that the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

1. Base Offense Level [§ 2B1.1]                                            6
2. Actual loss $250,000 to $550,000                                       +12
   [§ 2B1.1(b)(1)(G)]
3. Minor Role [§ 3B1.2]                                                   -2
4. Combination of Circumstances [§ 5K2.0] / 3553(a)] -2[1]
5. Acceptance of Responsibility [§ 3E1.1]                                 -3

### B.  ACCEPTANCE OF RESPONSIBILITY

Notwithstanding paragraph A above, the United States will not be obligated to recommend any adjustment for Acceptance of Responsibility under U.S.S.G. §§ 3E1.1 or 8C2.5 if Defendant engages in conduct

---

[1] Parties agree that a departure is warranted for a combination of circumstances, including Defendant's expeditious resolution of the case during a time of unprecedented strain on the court system due to COVID-19 pandemic, his limited period of involvement in the fraud and comparatively minor scope of knowledge of the health care fraud scheme's workings, his pre-plea cooperation, and the relative amount that his conduct contributed to the overall loss.

inconsistent with acceptance of responsibility including, but not limited to, the following:

    1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

    2. Falsely denies prior criminal conduct or convictions;

    3. Is untruthful with the United States, the Court or probation officer;

    4. Materially breaches this plea agreement in any way; or

    5. Contests or assists any third party in contesting the forfeiture of property(ies) seized in connection with this case, and any property(ies) to which the defendant has agreed to forfeit as set forth in the attached forfeiture addendum.

C. <u>FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553</u>

The parties agree that Defendant may request or recommend additional downward adjustments, departures, including criminal history departures under USSG § 4A1.3, or sentence reductions under 18 U.S.C. § 3553. The United States may oppose any downward adjustments, departures and sentence reductions not set forth in Section X, paragraph A above.

D. <u>NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY</u>

The parties have no agreement as to Defendant's Criminal History Category.

//

Plea Agreement

13

Def. Initials *RG*

E.  "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The parties agree that the facts in the "factual basis" section of this agreement are true, and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F.  PARTIES' RECOMMENDATIONS REGARDING CUSTODY

The parties agree that the United States will recommend a sentence within the advisory Guidelines range.

G.  SUPERVISED RELEASE

If the Court imposes a term of supervised release, the parties agree that Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least 2/3 of the term.

**XI**

**DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

A.  WAIVER OF RIGHT TO APPEAL CONVICTION AND SENTENCE

In exchange for the concessions by the United States in this plea agreement, Defendant waives, to the full extent of the law, any right to appeal the conviction, sentence, forfeiture order, fine, and restitution order.

B.  WAIVER OF RIGHT TO COLLATERAL ATTACK

Defendant waives, to the full extent of the law, any right to collaterally attack the conviction, sentence, forfeiture order, fine, and restitution order, except for a post-conviction collateral attack based on a claim of ineffective assistance of counsel.

//
//

Plea Agreement                    14

Def. Initials  *RG*

C. **OBJECTIONS TO UNITED STATES' RECOMMENDATION**

If Defendant believes the recommendation by the United States is not in accord with this plea agreement, Defendant will object at the time of sentencing; otherwise the objection will be deemed waived. If Defendant appeals, the United States may support on appeal the sentence, forfeiture order, fine, and restitution order actually imposed.

# XII

## BREACH OF THE PLEA AGREEMENT

A. **MATERIAL BREACH OF PLEA AGREEMENT**

Defendant acknowledges, understands, and agrees that if Defendant violates or fails to perform any of Defendant's obligations under this agreement, such violation or failure to perform will constitute a material breach of this agreement.

Defendant acknowledges, understands, and agrees further that the following non-exhaustive list of conduct by Defendant unquestionably constitutes a material breach of this plea agreement:

1. Failing to plead guilty pursuant to this agreement;
2. Withdrawing the guilty plea or attempting to withdraw the guilty plea;
3. Failing to fully accept responsibility as established in Section X, paragraph B, above;
4. Failing to appear in court;
5. Failing to abide by any lawful court order related to this case;
6. Appealing or collaterally attacking the sentence or conviction in violation of Section XI of this plea agreement; or

       7.    Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

### B. CONSEQUENCES OF BREACH

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the United States will be relieved of all its obligations under this plea agreement. For example, the United States may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the United States may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the United States may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the United States' pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements

and any evidence derived from the statements should be suppressed, cannot be used by the United States, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

## CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it. Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//
//
//
//
//
//
//
//
//
//
//

## XV

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and his counsel did not advise Defendant about what to say in this regard.

RANDY S. GROSSMAN
Acting United States Attorney

*Kevin J. Larsen*

4/15/2021
DATED

KEVIN J. LARSEN
Assistant U.S. Attorney


FOR DEFENDANT

*Adam S. Fels*

4-7-2021
DATED

ADAM FELS
Counsel for Defendant


IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.

04/07/2021
DATED

RONALD JAMES GREEN
Defendant

Plea Agreement

18

Def. Initials *RG*